UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| Heather A. Davis and Robert Sweeny, *on behalf of themselves and all others similarly situated*, | : : : : |
| Plaintiffs, | : Civil Case No.: 4:22-cv-90 : |
| vs. | : **CERTIFICATE OF INTERESTED** : **PARTIES AND CORPORATE** |
| Toyota Motor Sales, U.S.A., Inc., | : **DISCLOSURE STATEMENT** : |
| Defendant. | : : : |

## CLASS ACTION COMPLAINT

For this Class Action Complaint, Plaintiffs Heather A. Davis and Robert Sweeny, by undersigned counsel, state as follows:

## INTRODUCTION

1.     Plaintiffs bring this lawsuit on behalf of themselves and a proposed class of past and present owners and lessees of defective 2021 Toyota Venza vehicles (the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by Defendant Toyota Motor Sales, U.S.A., Inc. ("Defendant" or "Toyota").

2.     Plaintiffs and the Class were damaged because the Class Vehicles contain defective windshields which cause the windshields to crack, chip and/or fracture.

3.     Specifically, beginning as early as 2019 Toyota knew that the Class Vehicles contain one or more defects in the way the vehicles are manufactured and/or made that can cause the windshield to crack, chip and/or fracture (the "Windshield Defect" or the "Defect"). Upon information and belief, the Windshield Defect occurs due to either deficient materials

used to make the windshield itself and/or a deficiency in the structure of the Class Vehicles.

4.      Class Vehicle owners report that their windshields failed for no reason at all.
Others have reported windshield failure as a result of circumstances that would not cause a
non-defective windshield to fail, such as a very slight impact.

5.      Toyota, however, has refused to repair or replace the defective windshields in
the Class Vehicle under Toyota's warranty, requiring that Class Vehicle owners pay hundreds
or thousands of dollars to repair the Defect – even where the Defect occurs nearly
immediately after Class Vehicle owners take possession of their vehicles.

6.      In addition, the replacement windshields provided by Defendant (which Class
Vehicle owners must pay for out-of-pocket) are also defective and as a result, Class Vehicle
owners often must repeatedly replace their windshields multiple times.  Indeed, since leasing
her vehicle in June 2021, Plaintiff Davis has required *four* replacement windshields in less
than one year.

7.      Further, the Windshield Defect can and often does manifest immediately after
Class Members take ownership of the vehicles and Class Vehicle owners have likewise owner
likewise complained that she experienced the Windshield Defect within days or weeks of
acquiring their vehicles:

- NHTSA Complaint No. 11424457, July 12, 2021 (Incident Date July 2, 2021):
  "***Vehicle 2 weeks old***; small pebble (pea size) hit windshield centered on passenger
  vision (approx 80% from left to right) ; crack starts to form in windshield to left of
  driver vision (approx 10% from left to right) starting at the bottom in the black trim
  section - nowhere near pebble impact; over the next week (whi9le waiting on
  backordered replacement) crack continued to arc and lengthen to 60% windshield
  width"

- NHTSA Complaint No. 11424443, July 12, 2021 (Incident Date May 19, 2021):
  "***On May 19, 2021, 5 days after purchasing the 2021 Venza*** XLE, I got a rock
  peck about 6 inches from the bottom on the driver side center of the windshield. I
  was on my way home and stopped by a windshield repair shop to see if it could be

2

repaired to avoid further damage. The repair shop said it could and to return the following noon with the car. By the following morning, the small peck had turned into a 12 inch long run. Now it's about 30 inches long. A replacement windshield ($964 for the part) has been ordered but is on back-order with no projected delivery date. There are no aftermarket options."

8.      The Windshield Defect poses an extreme safety hazard to drivers, passengers, and pedestrians because a spontaneously shattering or cracking windshield can impair the driver's view, distract the driver, and result in dislodged glass that can injure drivers, passengers and pedestrians.

9.      Indeed, as set forth below the cracks on the Plaintiffs' and other Class Vehicle owners' respective windshields were significant, were spread across several feet of the windshields, obscured Class Vehicle owners' ability to see through their windshields, and made it more difficult to drive when, for instance, sunlight or light emanating from street lights reflected off of the windshields' chips and cracks and created a significant and strong glare across the Class Vehicles' windshields.

10.      Given the inherent safety risks associated with driving a vehicle with a cracked windshield, many states make it illegal to operate a vehicle with a cracked windshield where the windshield is defective such that it impairs the driver's vision. *See, e.g.*, Arizona Revised Statutes Title 28. Transportation § 28-959.01(B) ("a person shall not operate a motor vehicle with an object or material placed, displayed, installed, affixed or applied on the windshield or side or rear windows or with an object or material placed, displayed, installed, affixed or applied in or on the motor vehicle in a manner that obstructs or reduces a driver's clear view through the windshield or side or rear windows."); https://www.dps.texas.gov/section/vehicle-inspection/faq/faq-items-inspection (Texas vehicles may fail a state required inspection if "a damaged windshield creates a significant visibility issue for the driver.") (last visited Feb. 7,

2022); *see also, e.g.,* California Vehicle Code 26710 ("It is unlawful to operate any motor vehicle upon a highway when the windshield or rear window is in such a defective condition as to impair the driver's vision either to the front or rear."); N.Y. VAT § 375(22) ("It shall be unlawful to operate a motor vehicle upon the public highways of this state which is equipped with any glass which is so broken, fractured or discolored as to distort visibility.").

11.     Moreover, in the event a vehicle is involved in a collision, an intact windshield assists in transferring the force of a front-end impact down to the chassis, which reduces the effect of the impact felt inside the vehicle and helps protect the passengers. However, where a vehicle's windshield is cracked and then subsequently shatters during a collision, the vehicle occupants are at greater risk of sustaining injuries.

12.     In addition, the windshield is a vital component of a vehicle's safety restraint system, which also includes airbags and seatbelts.  These safety features, including the windshield, are all part of a safety network.  Each individual component of this network is dependent on the others functioning properly.  Thus, if there is a compromise or weakness in just one aspect of the network, the likelihood of other parts not working properly is increased. All components of a vehicle's safety restraint system are designed to work together to keep vehicle occupants within the relative safety of the passenger compartment during collision or roll over.

13.     To that end, the windshield provides support that a passenger-side airbag needs to deploy properly.  If the windshield is compromised, the airbag may be useless in a collision.  Similarly, the windshield provides much of the roof support for most vehicles.  As a result, the windshield is a crucial component in preserving the structural integrity of the vehicle's passenger compartment during roll-overs in that the windshield supports the roof,

thereby keeping the roof from collapsing and crushing the driver and passengers.

14.     In addition to these safety issues, the cost to repair the Windshield Defect can be exorbitant – often more than $1,000 for a replacement windshield – requiring consumers to pay significant sums over the life of their Class Vehicles.

15.     As set forth below, Defendant knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter.  Defendant has actively concealed the true nature and extent of the Windshield Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.

16.     Had Plaintiffs and the Class Members known about the Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

17.     Despite being notified of the Windshield Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on Venza enthusiast websites), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Windshield Defect, has not offered its customers a suitable repair or non-defective replacement windshield free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Windshield Defect.

18.     Toyota knew of and concealed the Windshield Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale and repair and thereafter.

19.     As a result of their reliance on Defendant's omissions and/or

misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

20.     Plaintiffs have each given Toyota a reasonable opportunity to cure the Windshield Defect, but Toyota has refused to cure the defect or otherwise has been unable to do so within a reasonable time.

21.     Toyota's conduct is in violation of the Texas Deceptive Practices Act, Tex. Bus. & Com. Code § 17.41, *et seq.,* the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. § 44-1522, *et seq.,* and constitutes fraudulent concealment, unjust enrichment, and a breach of express and implied warranties and the Magnuson-Moss Warranty Act.

22.     Toyota has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding  warranty obligations  –  while consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied Windshield Defect.

23.     To remedy Toyota's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from Toyota, as well as notification to class members about the defect.

## **PARTIES**

24.     Plaintiff Heather A. Davis ("Plaintiff Davis") is an adult individual residing in Tucson, Arizona.

25.     Plaintiff Robert Sweeny ("Plaintiff Sweeny") is an adult individual residing in El Paso, Texas.

26.     Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota" or "TMS") is incorporated and headquartered in Plano, Texas. TMS is Toyota Motor Corporation's U.S.

6

sales and marketing arm, which oversees sales and other operations in 49 states. Toyota distributes Toyota, Lexus, and Scion vehicles in the United States and sells these vehicles through its network of dealers. Money received from the purchase of a Toyota vehicle from a dealer flows from the dealer to TMS.

27.     At all times herein mentioned, Toyota designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold the Class Vehicles, including the vehicles operated by Plaintiffs. Toyota also reviews and analyzes warranty data submitted by Toyota's dealerships and authorized technicians in order to identify defect trends in vehicles. Upon information and belief, Toyota dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decide to audit the dealership. Toyota uses this information to determine whether particular repairs are covered by an applicable Toyota warranty or are indicative of a pervasive defect.

28.     Toyota also developed the marketing materials to which Plaintiffs and the Class were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Windshield Defect.

## JURISDICTION AND VENUE

29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more

class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff Davis and Class Members, and Defendant are citizens of different states.

30.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs present a claim under the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.  As to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

31.     Personal jurisdiction and venue are proper in this District as Defendant is headquartered in this District.

**FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS**

I.   **Heather A. Davis**

32.     On June 26, 2021, Ms. Davis leased a new 2021 Toyota Venza, Vehicle Identification Number JTEAAAAH0MJ052526 (hereafter the "Davis  Vehicle") from Rowe Enterprises, Inc. d/b/a Precision Toyota of Tucson ("Precision Toyota") in Tucson, Arizona, an authorized Toyota dealership.

33.     Prior to the lease, Precision Toyota assured Ms. Davis that the Davis Vehicle was accompanied by Toyota Motor Sales, U.S.A., Inc.'s written warranties and was free from defects of workmanship and that the car was safe and reliable.

34.     On or about the morning of July 1, 2021, Plaintiff Davis went out to her vehicle and observed an approximate 6-inch crack across her windshield which subsequently spread across the entirety of the windshield.

35.     On or about July 7, 2021, Ms. Davis brought her vehicle to Precision Toyota, presented the vehicle for repair, and requested that Precision Toyota repair or replace her

defective and cracked windshield.  Precision Toyota did not have parts available and had to

order a replacement windshield.  On or about August 3, 2021, Precision Toyota replaced the

Davis Vehicle's windshield and recalibrated the forward recognition camera, however Toyota

did not cover the cost of repair under its warranty. Instead, Ms. Davis had to pay $1,735.16

out-of-pocket for the repair and then subsequently submitted the bill to her insurance

company, who reimbursed Plaintiff for the cost of the replacement windshield.

36.     On or about August 27, 2021, the Davis Vehicle Suffered from the Windshield

Defect again.  On the morning of the 27th, Plaintiff Davis observed another crack across the

Davis Vehicle's windshield that spread across the length of the windshield despite nothing

impacting the windshield.

37.     On August 31, 2021, Plaintiff Davis brought the Davis Vehicle to Precision

Toyota again, presented the vehicle for repair, and requested that Precision Toyota repair or

replace her defective and cracked windshield.  Precision Toyota did not have parts available

and had to order a replacement windshield. On October 7, 2021 Precision Toyota replaced the

Davis Vehicle's windshield.  Precision Toyota did not cover the cost of replacing the

windshield under Toyota's warranty; Ms. Davis paid $1,735.16 out-of-pocket for the second

repair and then submitted the bill to her insurance company, who reimbursed Plaintiff for the

cost of the replacement windshield.

38.     On or about November 17, 2021, the Davis Vehicle suffered from the

Windshield Defect for a third time when Plaintiff Davis observed another crack across the

center of the Davis Vehicle's windshield despite nothing impacting the windshield.

39.     On November 24, 2021, Plaintiff brought the Davis Vehicle to Precision

Toyota for a third time, presented the vehicle for repair, and requested that Precision Toyota,

repair or replace her defective and cracked windshield. Precision Toyota did not have parts available and had to order a replacement windshield. On December 22, 2021, Precision Toyota replaced the Davis Vehicle's windshield.  Precision Toyota did not cover the cost of repair under Toyota's warranty and instead Plaintiff Davis' insurance company directly paid for the cost of the repair, $1,345.21

40.     On or about January 13, 2022, the Davis Vehicle experienced the Windshield Defect for the fourth time when Plaintiff observed another crack across the length of the Davis Vehicle's windshield.

41.     On January 18, 2022, Plaintiff Davis brought the Davis Vehicle to Precision Toyota for the fourth time and requested that Precision Toyota repair or replace the windshield. Precision Toyota then ordered a replacement part and on January 26, 2021, Precision Toyota replaced the Davis Vehicle's windshield.  Here too, Precision Toyota declined to perform the  repair under Toyota's warranty and thus Ms. Davis paid $1,735.16 out-of-pocket for the fourth repair and then submitted it to her insurance company, who reimbursed Plaintiff for the cost of the replacement windshield..

42.     Moreover, when Plaintiff Davis complained to Precision Toyota and sought repairs regarding the Windshield Defect, Precision Toyota mentioned to Plaintiff that it had to replace other Venza vehicles' windshields that also suffered from  the Windshield Defect.

43.     On January 25, 2022, Ms. Davis, through her counsel, sent a letter to Toyota advising it that the Davis Vehicle suffered from the Windshield Defect and that Ms. Davis was repeatedly denied a replacement windshield under Toyota's warranty.

44.     At all times, Ms. Davis has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

45.     Because Toyota did not have replacement windshields available for Plaintiff, Plaintiff often had to drive the Davis Vehicle while it was suffering from the Windshield Defect.  During these instances, sunlight and light emanating from streetlights would reflect off of the cracks on the Davis Vehicle's windshield, creating a significant glare which made it difficult for Ms. Davis to see through her windshield while driving.

46.     Further, given the long stretches that Plaintiff was required to wait for replacement windshields and the extent to which the Windshield Defect impacted her visibility, Plaintiff Davis eventually began driving a different vehicle as an alternative mode of transportation until she received a replacement windshield from Toyota.

## II.   Robert Sweeny

47.     On July 6, 2021, Mr. Sweeny purchased a new 2021 Toyota Venza, Vehicle Identification Number JTEAAAAH4MJ053310 (hereafter the "Sweeny  Vehicle") from Poe Toyota  in El Paso, Texas, an authorized Toyota dealership.

48.     Prior to the purchase, Poe Toyota assured Mr. Sweeny that the Sweeny Vehicle was accompanied by Toyota Motor Sales, U.S.A., Inc.'s written warranties.

49.     Approximately two months later in September 2021, Plaintiff Sweeny experienced the Windshield Defect when he observed a small pebble impact his windshield and shortly thereafter there was an approximately 14-16-inch crack across the windshield.

50.     On September 21, 2021, Plaintiff Sweeny presented the Sweeny Vehicle to Poe Toyota for repair. In response, Poe Toyota replaced the Sweeny Vehicle's windshield but declined to perform the  repair under Toyota's warranty. Mr. Sweeny was charged $1,071.23 for the repair; he submitted the bill to his insurance company and paid a $500.00 deductible to his insurance company.

51.     On February 7, 2022, Mr. Sweeny, through his counsel, sent a letter to Toyota advising it that the Sweeney Vehicle suffered from the Windshield Defect and that Mr. Sweeny was repeatedly denied a replacement windshield under Toyota's warranty.

52.     At all times, Mr. Sweeny has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## FACTUAL ALLEGATIONS

### The Windshield Defect

53.     After discontinuing its Venza line of vehicles in 2015, Toyota re-released the mid-size crossover SUV in August 2020 with its 2021 Venza model.

54.     Since then it has sold tens of thousands of 2021 Venza Class Vehicles across the United States.

55.     The Class Vehicles suffer from the Windshield Defect, which causes the Class Vehicles' front windshield to crack, chip and/or fracture for no reason at all and/or under circumstances that would not cause non-defective windshields to similarly fail.  The Windshield Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on visibility as well as the Class Vehicles' structural integrity, and the potential for injury.

56.     Class Vehicle owners report that despite having driven other vehicles for decades, their Class Vehicles are the only vehicles they've seen suffer from cracked windshields under similar circumstances, i.e., where there has been no impact damage or a slight impact from a small pebble:

- NHTSA Complaint No. 11424439, July 12, 2021 (Incident Date July 9, 2021): "Small rock hit windshield causing it to immediately crack 12" long and in an arc. **In 55 years driving never had this occurrence.** Checked website and apparently

there are quite a few incidents of the same size of crack and arc happening in 2021 Venza. Wondered if there is a manufacturers defect with this windshield."

- NHTSA Complaint No. 11440966, November 18, 2021 (Incident Date November 18, 2021): "Don't recall anything unusual hitting my windshield (other than sandy grit), but when I drove it today there is a small chip and 12" crack. **I have driven cars for 35 years and have never had such a fragile windshield on a car**. I think it is defective, because I read about a bunch of other people having the same issue on this Toyota Nation site (and also Facebook)- https://www.toyotanation.com/threads/windshield-repair.1695878/ It is not very safe to have people drive around with windshields like this, especially if it is the fault of poor manufacturing. And even though you are supposed to get it fixed with insurance, I am not in a place right now to afford the deductible to get it fixed."

- NHTSA Complaint No. 11447572, January 15, 2022 (Incident Date December 22, 2021): "Very fragile windshield. Although this may be hard to measure, **I only had a very small rock hit and the windshield cracked. I've been driving for 25 years (16 cars and suvs) and never had such a small impact create a significant crack**. It created a visibility issue and I'm worried about future issues."

57.     Further, Toyota refuses to repair or repair or replace the Windshield Defect under its written warranty when given a reasonable opportunity to do so.  As detailed above, Toyota refused to repair or replace the Plaintiffs' windshields under Toyota's warranty. Likewise, as detailed in the NHTSA and online complaints reproduced below, other Class Vehicle owners complain that Toyota dealers charge them out-of-pocket for repairs.

58.     Not only does Toyota refuse to repair the Windshield Defect under its warranty, but because of how widespread the issue is, Toyota often takes months to provide Class Vehicle owners with replacement windshields. As set forth above, Plaintiff Davis had to wait several weeks or more than one month for each her replacement windshields.  Another Class Vehicle owner complained that they had still not received a replacement windshield after waiting for "2 months" and was told by their dealer that there is a "back order of 500 windshields":

- NHTSA Complaint No. 11427941, August 5, 2021 (Incident Date June 5, 2021): "Pebble hit windshield. No initial damage 1/2 hour later, windshield crack across

13

entire windshield. This appears to be happening to other 2021 Venza based on
internet comments. There has been 2 month delay in fixing. Still not fixed. Local
Toyota says there is back order of 500 windshields. This is brand new model. The
number of back order sounds excessive."

59.     Moreover, on information and belief, when windshield repairs are performed

by Defendant's dealers (for charge), defective windshields are merely replaced with similarly

defective windshields.  Thus, Plaintiff Davis has required four replacement windshields to

date.

60.     Toyota had and has a duty to fully disclose the true nature of the Windshield

Defect and the associated repair costs to Class Vehicle owners, among other reasons, because

the Defect poses an unreasonable safety hazard; because Toyota had and has exclusive

knowledge or access to material facts about the Class Vehicles' front windshield that were

and are not known to or reasonably discoverable by Plaintiffs and the other Class Members;

and because Toyota has actively concealed the Windshield Defect from its customers.

Because the windshield contained in each Class Vehicle is defective, each Class Vehicle

windshield should be replaced by Toyota free of charge regardless of whether the windshield

has failed, or the facts and circumstances surrounding any failure.

**Toyota's Knowledge of the Defect**

61.     Before Toyota sold Plaintiffs their Class Vehicles, Toyota was on notice that

the Class Vehicles suffered from the Windshield Defect, however Toyota failed to disclose

the existence of the defect to Plaintiff or any other Class Vehicle owner.

62.     Toyota became aware of the Windshield Defect through sources not available

to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-

production design failure mode and analysis data, production design failure mode and analysis

data, early consumer complaints made exclusively to Toyota's network of dealers and directly

to Toyota, aggregate warranty data compiled from Toyota's network of dealers, testing

conducted by Toyota in response to consumer complaints, and repair order and parts data

received by Toyota from Toyota's network of dealers.

63.     For instance, Toyota touts its Arizona Proving Ground, a 12,000 acre facility

with 77 miles of testing surfaces where it has tested vehicles since 1993  to "better develop

vehicles for the North American market."1  The facility provides Toyota with an

"environment to test vehicles to their limits" and "[v]irtually every Toyota, Lexus and Scion

vehicle sold in North America comes through the proving ground at some point in its

development"  so that Toyota can "confirm the durability and suitability of the vehicle to

ensure quality for our customers."2

64.     On information and belief, during the pre-release process of designing,

manufacturing, engineering, and performing durability testing on the Class Vehicles, which

would have likely occurred between 2019 and early 2020 before Toyota began selling the

Class Vehicles in August 2020, Toyota necessarily would have gained comprehensive and

exclusive knowledge about the Class Vehicles' windshields: the types and properties of

materials used to make them, including their durability and whether those materials would

weaken over time regardless of wear and use; the basic engineering principles behind their

construction; the forces and stresses the windshields would face; when and how the

windshields would fail; and the cumulative and specific impacts on the windshields caused by

wear and use, the passage of time, and environmental factors.

65.     An adequate pre-release analysis of the design, engineering, and manufacture

---

[1] http://tds.tekgroupweb.com/team-members/toyota-arizona-proving-grounds-nine-things-to-know.htm (last visited Feb. 4, 2022).
[2] http://tds.tekgroupweb.com/products/north-american-vehicles-take-the-fast-track-at-arizona-proving-ground.htm (last visited Feb. 4, 2022)

of the windshields used for the Class Vehicles would have revealed to Toyota that the windshields were insufficiently strong and durable for the intended use. Thus, during the pre-release analysis stage of the Class Vehicles, Toyota would have known that the windshield chosen for the Class Vehicles was defective and would pose a safety risk to owners/lessees and the motoring public.  Despite that such testing on the Class Vehicles revealed the Windshield Defect to Toyota, Toyota failed to remedy the manufacturing processes with the Class Vehicles before putting the vehicles into production and selling them to the public.

66.     Upon information and belief, Toyota also would have known about the Windshield Defect because of the higher than expected number of replacement windshields ordered from Toyota, which should have alerted Toyota that this was a defective part.  Upon information and belief, Toyota service centers use Toyota replacement parts that they order directly from Toyota.  Therefore, Toyota would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement windshields.  The ongoing sales of replacement windshields was known to Toyota and would have alerted Toyota that its windshields were defective and posed a safety risk early on.

67.     Toyota also knew about the Windshield Defect because numerous consumer complaints regarding windshield failure were made directly to Toyota. The large number of complaints, and the consistency of their descriptions of windshield failure alerted Toyota to this serious Defect affecting the Class Vehicles.  The full universe of complaints made directly to Toyota about the Windshield Defect is information presently in the exclusive custody and control of Toyota and is not yet available to Plaintiffs prior to discovery. However, upon information and belief, many Class Vehicle owners complained directly to Toyota and Toyota dealerships and service centers about the repeated windshield failures their

Vehicles experienced.

68.     Because the Windshield Defect can and does manifest almost immediately –
often within days or weeks of the  Class Vehicles first being driven – Toyota began receiving
notification of the higher than expected number of replacement windshields ordered from
Toyota and consumer complaints regarding windshield failure within days or at most weeks
after Toyota began selling the Class Vehicles in August 2020.

**The NHTSA Complaints and Online Discussions of the Defect:**

69.     Upon information and belief, thousands of purchasers and lessees of the Class
Vehicles have experienced the Windshield Defect.  Given how widespread the issue is and the
fact that windshields often crack within days or weeks of their sale, Class Vehicle owners
have been complaining about the Windshield Defect directly to Toyota since 2020 and have
been posting such complaints online since at least early 2021.

70.     For instance on www.ToyotaNation.com, a Toyota vehicle enthusiast website
that upon information and belief Toyota regularly monitors, a March 22, 2021 post written by
a Class Vehicle owner noted that they "bought a new 2021 Venza Limited four days ago" and
had already "noticed a 12 inch crack on the windshield right in the drivers field of view."[3]
Other Class Vehicle owners responded that they had near-identical experiences; one "had
pretty much the exact same thing happen to me, at the exact same milage, same rock location,
same sounding crack" and another also "had the same thing happen around the same mileage.
Started on the drivers side and made a perfect circle around the perimeter of the window. No
crack when my wife went into work and came out to it (there was a fairly drastic temperature
change that day)."[4]  Others likewise complained they "[o]nly had my Venza for a week and

---

[3] https://www.toyotanation.com/threads/windshield-repair.1695878/ (last visited Feb. 4, 2022).
[4] *Id.*

have to have the windshield replaced. Never have I gotten a chip in a windshield from anything hitting it, this windshield has to be faulty" or that they experienced a "cracked windshield" within "not even 2 months."[5] And other Class vehicle owners complained about having multiple cracks.[6]

71.     Moreover, complaints concerning the Windshield Defect are the most common complaint topic amongst NHTSA complaints regarding the Class Vehicles.  The below example complaints concerning 2021 Toyota Venza vehicles, filed by consumers with the NHTSA and posted on the Internet, which on information and belief Toyota actively monitored during the relevant time period, demonstrate that the Defect is widespread and dangerous and that Toyota has known about the defect at all relevant times.

- NHTSA Complaint No. 11424516, July 12, 2021 (Incident Date June 15, 2021): "Faulty front windshield cracked without any known damage."

- NHTSA Complaint No. 11424457, July 12, 2021 (Incident Date July 2, 2021): "Vehicle 2 weeks old; small pebble (pea size) hit windshield centered on passenger vision (approx 80% from left to right) ; crack starts to form in windshield to left of driver vision (approx 10% from left to right) starting at the bottom in the black trim section - nowhere near pebble impact; over the next week (whi9le waiting on backordered replacement) crack continued to arc and lengthen to 60% windshield width"

- NHTSA Complaint No. 11424443, July 12, 2021 (Incident Date May 19, 2021): "On May 19, 2021, 5 days after purchasing the 2021 Venza XLE, I got a rock peck about 6 inches from the bottom on the driver side center of the windshield. I was on my way home and stopped by a windshield repair shop to see if it could be repaired to avoid further damage. The repair shop said it could and to return the following noon with the car. By the following morning, the small peck had turned into a 12 inch long run. Now it's about 30 inches long. A replacement windshield ($964 for the part) has been ordered but is on back-order with no projected delivery date. There are no aftermarket options."

---

[5] *Id.*

[6] *Id.* ("The same issue here. I got the new Venza in Jan 2021 and have had wind shield cracks twice. First time it was repairable but the next time it is a spider web, it happened while I was waiting on stop sign. I looks like the glass is not toughened correctly and so breaks easily.").

- NHTSA Complaint No. 11424439, July 12, 2021 (Incident Date July 9, 2021): "Small rock hit windshield causing it to immediately crack 12" long and in an arc. In 55 years driving never had this occurrence. Checked website and apparently there are quite a few incidents of the same size of crack and arc happening in 2021 Venza. Wondered if there is a manufacturers defect with this windshield."

- NHTSA Complaint No. 11424427, July 12, 2021 (Incident Date June 24, 2021): "Very small rock hit front windshield, which cracked soon after purchase. I might be willing to rack this up to bad luck, but there are several others that have posted online about the exact same scenario, see ToyotaNation forum https://www.toyotanation.com/threads/windshield-repair.1695878/ as well as on the Facebook 2021+ Venza hybrid club. I think its likely that the front windshield is under engineered and this presents a safety hazard. Im a fan of Toyota but I think there is something that needs to be looked at here."

- NHTSA Complaint No. 11425071, July 16, 2021 (Incident Date July 11, 2021): "While traveling in CT on Sunday 7/11/21 a small pea sized stone struck windshield directly in front of driver position about 10 inches up from bottom of glass. Within 10 miles the windshield cracked to the bottom edge from the original contact area and additionally up and across windshield to a total length of about 20 inches. The original damage likely could have been repaired but with the run of the crack now has to be replaced. Multiple others have reported this issue on the Venza. Pics available for review by government or Toyota representatives. Windshield is being scheduled for replacement in the next week or so."

- NHTSA Complaint No. 11426158, July 23, 2021 (Incident Date June 1, 2021): "1 month after buying vehicle i heard as if a rock hit the car. I assume that's what happened but i did not see it hit. When i got home, i saw a chip in the lower edge of the passenger side (in the black part of the glass) on the windshield. There have been no appointments to repair, but 6 weeks after, the windshield cracked overnight while sitting in the garage. The crack formed an arc towards the driver side and is about 18 inches long. I have noticed reporte of other owners reporting the exact same thing, so thought i would report based on how similar their accounts are to my experience."

- NHTSA Complaint No. 11427027, July 29, 2021 (Incident Date June 14, 2021): "6/14/2021 Rock hit front shield bottom right corner no visable crack. 6/24/2021 Parked car for a few days came back and had to use windshield wipers and their now there is an arc crack on the winshield. The arc crack comes all the way 1/3 of the way up the windshield into the drivers view when looking to the right side of the windshield. Contacted Safelight insurance and they will be replacing the windhield."

- NHTSA Complaint No. 11427810, August 4, 2021 (Incident Date August 3, 2021): "An object, possibly a rock, flew up from the road and caused a chip in the windshield that turned into a crack from the far left side of the windshield to the

middle. I have had several other vehicles in the past that rocks have hit the windshield and no damage was done."

- NHTSA Complaint No. 11427941, August 5, 2021 (Incident Date June 5, 2021): "Pebble hit windshield. No initial damage 1/2 hour later, windshield crack across entire windshield. This appears to be happening to other 2021 Venza based on internet comments. There has been 2 month delay in fixing. Still not fixed. Local Toyota says there is back order of 500 windshields. This is brand new model. The number of back order sounds excessive."

- NHTSA Complaint No. 11431799, September 5, 2021 (Incident Date July 15, 2021): "Wind screen of new Venza is very vulnerable to chipping. In first 7 months of driving it happened twice. On same route I drove Prius for 230,000 miles with no issues. It seems the glass is not tough enough and with slight hit by stone it easily breaks. This happened while I was on a stop sign waiting for other vehicle to pass."

- NHTSA Complaint No. 11432590, September 11, 2021 (Incident Date September 7, 2021): "Front windshield experienced a 2' long crack from top center thru drivers filed of vision. Car was parked on a 75' degeee day. Crack was not there prior to parking! Total replacement was recommended by dealership."

- NHTSA Complaint No. 11433148, September 15, 2021 (Incident Date September 15, 2021): "I bought a Toyota Venza, I made my first road trip and with approximately 800 miles traveled a small rock rubbed my windshield and became a big rock chip, I took it to repair on safelite and it was not 100, it is still crashed. I have read that several people have had the same incident, I am concerned that this is an issue of failures in the security systems with the front windshield."

- NHTSA Complaint No. 11433253, September 16, 2021 (Incident Date August 15, 2021): "6 months old and 10k miles caught a rock at the top right hand corner where glass meets the body. Cracked immediately diagonally through the middle of the windshield just stopping about an inch left of the rearview mirror."

- 

- NHTSA Complaint No. 11433531, September 19, 2021 (Incident Date September 18, 2021): "While driving on the freeway I heard what sounded like a tiny pebble hit the front windshield. Shortly after while driving I noticed a crack in the shape of an arc appeared from the passenger side bottom of the windshield towards the upper center of the windshield. This crack continues to grow as I drove. Even parked, the crack has expanded slightly."

- 

- NHTSA Complaint No. 11434639, September 28, 2021 (Incident Date September 24, 2021): "Windshield cracked passenger side with 2.5 inch circular area defect, with crack from passenger edge to midpoint. There was no traffic at the time in front of me or oncoming traffic. Was in an area of just grasslands on paved road. Temperature was in the 80's. Speed at 75mph. Sunny day. No known rock hit prior to this. Purchase July 2021."

- NHTSA Complaint No. 11438760, October 30, 2021 (Incident Date August 10, 2021): "i am writing to complain of cracking the vehicle windshield. the vehicle is a Toyota Venza 2021 and it has been cracked very soon after two weeks that I have got from dealership. i think that is very vulnerable part of this new vehicle and is a malfunction, since my other past vehicles never had such failures in the winshield like this. i have had this problem more than three months ago and still after three month, Toyota has not provided it to me. it is extending rapidly and I have to drive with cracked winshiekld. i have ordered that on august 2021 at Toyota Westminister Vancouver and still agter three month they just update the date to the next month. I have submitted my full ICBC insurance and an extra insurance to the dealership at parts section, but they say this is a National back order for both Canada and States. As I said I live in Vancouver Canada, i had to put a different address in states to submit,you can reach me via my Email. Thanks

- NHTSA Complaint No. 11440966, November 18, 2021 (Incident Date November 18, 2021): "Don't recall anything unusual hitting my windshield (other than sandy grit), but when I drove it today there is a small chip and 12" crack. I have driven cars for 35 years and have never had such a fragile windshield on a car. I think it is defective, because I read about a bunch of other people having the same issue on this Toyota Nation site (and also Facebook)-https://www.toyotanation.com/threads/windshield-repair.1695878/ It is not very safe to have people drive around with windshields like this, especially if it is the fault of poor manufacturing. And even though you are supposed to get it fixed with insurance, I am not in a place right now to afford the deductible to get it fixed."

- NHTSA Complaint No. 11441751, November 26, 2021 (Incident Date November 26, 2021): "While driving we noticed a line in the windshield. After inspection we realized that the line is actually a crack. It started at the base in the right corner (passenger side). No rocks or any impact with any objects."

- NHTSA Complaint No. 11444877, December 23, 2021 (Incident Date November 20, 2021): "Windshield cracked along drivers side with no known rock impact and no evidence of a rock hit. It appears the windshield just cracked. The crack was about 2 feet long. Car was only a few weeks old when this happened."

- NHTSA Complaint No. 11446420, January 5, 2022 (Incident Date January 5, 2022): "Windshield cracked. Car only has about 4500 miles. Many other 2021 Venza owners are experiencing the same issue. Obstructed visibility is a major hazard."

- NHTSA Complaint No. 11447572, January 15, 2022 (Incident Date December 22, 2021): "Very fragile windshield. Although this may be hard to measure, I only had a very small rock hit and the windshield cracked. I've been driving for 25 years (16 cars and suvs) and never had such a small impact create a significant crack. It created a visibility issue and I'm worried about future issues."

- NHTSA Complaint No. 11447731, January 17, 2022 (Incident Date November 13, 2021): "Windshield cracked when rock hit it."

- NHTSA Complaint No. 11447953, January 18, 2022 (Incident Date January 10, 2022): "Windshield crack after 6 months of ownership. Woke up one day and found it cracked in my garage while parked."

- NHTSA Complaint No. 11448178, January 20, 2022 (Incident Date January 19, 2022): "The vehicle was parked in a parking lot for several hours. After returning to the vehicle, it was found that a crack had appeared on the drivers side of the windshield that was approximately 12 inches long, starting at the bottom left of the windshield, and moving upwards. The crack is right through the middle of where the driver must look when driving down the road, which is a safety hazard. The salesman at the dealer stated that he hadn't heard about this problem, but in looking online, many others have complained about the same vehicle having windshield cracking issues. The vehicle is scheduled to be inspected by the dealer tomorrow."

- NHTSA Complaint No. 11448437, January 22, 2022 (Incident Date January 21, 2022): "Windshield stress cracks for no reason, nothing hit it. Venza windshields are defective and hazardous."

- NHTSA Complaint No. 11448663, January 24, 202 (Incident Date January 24, 2022): "Windshield cracked center of windshield, at the bottom, from a small pebble hitting it about 2 inches from the bottom. Car has approx. 7,500 miles and is barely 7 months old. Have seen this problem with dozens of owners in the same location of the windshield. Windshield also is leaking (see photo) from under the rearview mirror plastic cover."

72.     Although Toyota was aware of the widespread nature of the Windshield Defect in the Class Vehicles, and that it posed grave safety risks, Toyota has failed to take adequate steps to notify all Class Vehicle owners of the Defect and provide relief.

73.     Customers have reported the Windshield Defect in the Class Vehicles to Toyota directly and through its dealers.  Defendant is fully aware of the Windshield Defect contained in the Class Vehicles.  Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendant:

    a.   failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Windshield Defect;

    b.   failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their front windshield were not in good working order, were defective, and were not fit for their intended purpose; and,

    c.   failed to disclose and/or actively concealed the fact that the Class Vehicles and their front windshield were defective, despite the fact that Defendant learned of the Windshield Defect as early as 2019.

74.    Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Windshield Defect contained in the Class Vehicles.

75.    Defendant has not recalled the Class Vehicles to repair the Windshield Defect, has not offered to its customers a suitable repair or replacement of parts related to the Windshield Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Windshield Defect.

76.    Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

77.    As a result of the Windshield Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's front windshield is not defective and will not crack, chip and/or fracture for no reason at all or under circumstances that would

not cause non-defective windshields to similarly fail.  Plaintiffs and Class Members further

expect and assume that Toyota will not sell or lease vehicles with known safety defects, such

as the Windshield  Defect, and will fully disclose any such defect to consumers prior to

purchase or offer a suitable non-defective repair.  They do not expect that Toyota would fail

to disclose the Windshield Defect to them, and then purport to remedy the defect with an

underinclusive and inadequate Customer Satisfaction Initiative.

## CLASS ACTION ALLEGATIONS

### A.  The Classes

78.     Plaintiffs bring this action on their own behalf, and on behalf of a nationwide

class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:** All persons or entities in the United States who are current or

former owners and/or lessees of a Class Vehicle.

79.     In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P.

23(c)(5), Plaintiffs seek  to  represent  the following state-specific classes:

**Arizona Class:** All persons or entities who purchased or leased any 2021 Toyota
Venza vehicle in the State of Arizona (the "Arizona Class")

**Texas Class:** All persons or entities who purchased or leased any 2021 Toyota
Venza vehicle in the State of Texas (the "Texas Class")

80.     Defendant and its employees or agents are excluded from the Class.

### B.  Numerosity

81.     Upon information and belief, the Classes are each so numerous that joinder of

all members is impracticable. While the exact number and identities of individual members of

the Classes are unknown at this time, such information being in the sole possession of

Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe,

24

and on that basis allege, that thousands of Class Vehicles have been sold and leased

nationwide and throughout Arizona and Texas.

### C.  <u>Common Questions of Law and Fact</u>

82.    There are questions of law and fact common to the Class that predominate over

any questions affecting only individual Class members.  These questions include:

a.    whether the Class Vehicles suffer from the Windshield Defect;

b.    whether the Windshield Defect constitutes an unreasonable safety hazard;

c.    whether Defendant knows about the Windshield Defect and, if so, how long

Defendant has known of the Defect;

d.    whether the defective nature of the Class Vehicles' front windshield constitutes

a material defect;

e.    whether Defendant had and has a duty to disclose the defective nature of the

Class Vehicles' front windshield to Plaintiffs and the other Class Members;

f.    whether Plaintiffs and the other Class Members are entitled to equitable relief,

including, but not limited to, a preliminary and/or permanent injunction;

g.    whether Defendant knew or reasonably should have known of the Windshield

Defect contained in the Class Vehicles before it sold or leased them to Class

Members; and

h.    Whether Defendant breached its express warranty and the implied warranty of

merchantability, engaged in fraudulent concealment and unjust enrichment, and

whether Defendant violated the Texas Deceptive Practices Act, Tex. Bus. &

Com. Code § 17.41, *et seq.*, the Arizona Consumer Fraud Act, Ariz. Rev. Stat.

Ann. § 44-1522, *et seq.,* and the Magnuson-Moss Warranty Act, as alleged in

this Complaint.

**D.  Typicality**

83.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased or leased defective Class Vehicles, as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

**E.  Protecting the Interests of the Class Members**

84.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their counsel has any interest which might cause them not to vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

85.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an

economy of scale, and comprehensive supervision by a single court.  Upon information and

belief, members of the Class can be readily identified and notified based on, *inter alia*,

Defendant's vehicle identification numbers, warranty claims, registration records, and

database of complaints.

86.     Defendant has acted, and refused to act, on grounds generally applicable to the

Classes, thereby making appropriate final equitable relief with respect to the Classes as a

whole.

## FIRST CAUSE OF ACTION
**Breach of Implied and Express Warranties Pursuant to the Magnuson-Moss Warranty
Act, 15 U.S.C. §2301, *et seq.*
(Plaintiffs on behalf of the Nationwide Class or in the alternative Plaintiff Davis on
behalf of the Arizona Class and Plaintiff Sweeny on behalf of the Texas Class)**

87.     Plaintiffs incorporate by reference all of the above paragraphs of this

Complaint as though fully stated herein.

88.     Plaintiffs and members of the Classes are each a "consumer" as defined in 15

U.S.C. § 2301(3).

89.     Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4)

and (5).

90.     The Class Vehicles are each a "consumer product" as defined in 15 U.S.C.

§ 2301(6).  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is

damaged by the failure of a warrantor to comply with the written and implied warranties.

91.     15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any

defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and

without charge to the Plaintiffs and Class members.

92.     The Defendant's sale of the defective Class Vehicles and its failure and/or

refusal to repair the Class Vehicles' Windshield Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

93.     Despite repeated demands, Defendant has failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

94.     As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs and class members have suffered damaged.

## SECOND CAUSE OF ACTION
### Fraudulent Concealment
**(Plaintiffs on behalf of the Nationwide Class or in the alternative Plaintiff Davis on behalf of the Arizona Class and Plaintiff Sweeny on behalf of the Texas Class)**

95.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

96.     By failing to disclose and concealing the defective nature of the Class Vehicles' front windshield from Plaintiffs and Class Members, Toyota concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

97.     Defendant knew that the Class Vehicles' front windshields suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

98.     Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles' front windshields and/or the associated repair costs because:

a.     Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' front windshields;

28

b.      Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their front windshields have a dangerous safety defect until after they purchased the Class Vehicles; and,

c.      Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

99.     On information and belief, Toyota still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the Windshield Defect and the performance and quality of Class Vehicles.

100.    The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

101.    Plaintiffs and the Class relied on Defendant to disclose material information it knew, such as the defective nature of the windshields in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

102.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

103.    The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

104.    Had Plaintiffs and other Class Members known that the Class Vehicles' front windshields were defective, they would not have purchased the Class Vehicles or would have

paid less for them.

105.    Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles and their front windshields.

106.    As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles and their front windshields are defective and require repairs or replacement and are worth less money because of the Defect.

107.    Accordingly, Toyota is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

108.    Toyota's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights and well-being, to enrich Toyota. Toyota's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

109.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Toyota has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Windshield Defect. Toyota has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Toyota's misconduct alleged herein, Plaintiffs and Class Members were not receiving vehicles of the quality, nature, fitness, or value that had been represented by Toyota, and that a reasonable consumer would expect.

110.    Toyota has been unjustly enriched by its fraudulent, deceptive, and otherwise

unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Toyota to retain these profits and benefits, and Toyota should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

### THIRD CAUSE OF ACTION

**Unjust Enrichment**
**(Plaintiffs on behalf of the Nationwide Class or in the alternative Plaintiff Davis on behalf of the Arizona Class and Plaintiff Sweeny on behalf of the Texas Class)**

111.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

112.    Toyota has long known that about the Windshield Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

113.    As a result of its fraudulent acts and omissions related to the Windshield Defect, Toyota obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

114.    Toyota appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Windshield Defect, paid a higher price for their vehicles which actually had lower values. Toyota also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

115.    It would be inequitable and unjust for Toyota to retain these wrongfully obtained profits.

116.    Toyota's retention of these wrongfully obtained profits would violate the

fundamental principles of justice, equity, and good conscience.

117.     As a result of Defendant's unjust enrichment, Plaintiffs and Class Members
have suffered damages.

118.     Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather,
Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits
that Defendant obtained as a result of its unjust conduct.

119.     Additionally, Plaintiffs seek injunctive relief to compel Defendant to offer,
under warranty, remediation solutions that Defendant identifies. Plaintiffs also seek injunctive
relief enjoining Defendant from further deceptive distribution, sales, and lease practices with
respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with the
misleading information; compelling Defendant to provide Class members with a replacement
components that do not contain the defects alleged herein; and/or compelling Defendant to
reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury
alleged and to notify all Class Members that such warranty has been reformed. Money
damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## **FOURTH CAUSE OF ACTION**

**Violation of the Texas Deceptive Practices Act
Tex. Bus. & Com. Code § 17.41, *et seq.*
(Plaintiff Sweeny on behalf of the Texas Class)**

120.     Plaintiffs incorporate by reference all allegations contained in this Complaint
as though fully stated herein.

121.     The Sweeny Vehicle and the Texas Class Vehicles are "goods" under Tex.
Bus. & Com. Code § 17.45(1) because they are tangible chattel that were purchased or leased
for use.

122.    Defendant is a "person" under Tex. Bus. & Com. Code § 17.45(3) because it is a corporation.

123.    Plaintiff Sweeny and the Texas Class Members are "consumers" under Tex. Bus. & Com. Code § 17.45(4) because they sought or acquired their vehicle by purchase.

124.    At all relevant times, Defendant has engaged in "trade" and "commerce" under Tex. Bus. & Com. Code § 17.45(6) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

125.    The allegations set forth herein constitute false, misleading, or deceptive trade acts or practices in violation of Texas's Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code § 17.41, et seq.

126.    By failing to disclose and concealing the defective nature of the Class Vehicles' front windshield from Plaintiff Sweeny and Texas Class Members, Defendant violated the Texas Deceptive Practices Act as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

127.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

128.    Defendant knew that the Class Vehicles' front windshields suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

129.    Defendant was under a duty to Plaintiff Sweeny and the Texas Class Members to disclose the defective nature of the Class Vehicles' front windshields and/or the associated repair costs because:

a.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' front windshields;

b.    Plaintiff Sweeny and the Texas Class Members could not reasonably have been expected to learn or discover that their front windshields have a dangerous safety defect until after they purchased the Class Vehicles; and,

c.    Defendant knew that Plaintiff Sweeny and the Texas Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

130.    The facts concealed or not disclosed by Defendant to Plaintiff Sweeny and Texas Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

131.    Plaintiff Sweeny and the Texas Class relied on Defendant to disclose material information it knew, such as the defective nature of the windshields in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

132.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

133.    Moreover, Defendant's intentional concealment of and failure to disclose the Windshield Defect constitutes an "unconscionable action or course of action" under Tex. Bus. & Com. Code § 17.45(5) because, to the detriment of Plaintiff Sweeny and the Texas Class, that conduct took advantage of Plaintiff and Class Members' lack of knowledge, ability, and

34

experience to a grossly unfair degree.  That "unconscionable action or course of action" was a producing cause of the economic damages sustained by Plaintiff Sweeny and the Texas Class.

134.    The facts concealed or not disclosed by Defendant to Plaintiff Sweeny and the other Texas Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

135.    Had Plaintiff Sweeny and other Texas Class Members known that the Class Vehicles' front windshields were defective, they would not have purchased the Class Vehicles or would have paid less for them.

136.    Plaintiff Sweeny and the other Texas Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles and their front windshields.

137.    As a result of Defendant's misconduct, Plaintiff Sweeny and the other Texas Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles and their front windshields are defective and require repairs or replacement and are worth less money because of the Defect.

138.    In addition, Defendant is also liable under Tex. Bus. & Com. Code § 17.50(a) because Defendant's breach of the implied warranty of merchantability set forth below was a producing cause of economic damages sustained by Plaintiff Sweeny and the Texas Class Members.

139.    Plaintiff Sweeny has provided adequate notice to Defendant.

140.    Plaintiff Sweeny  and the Texas Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to

disclose the defective nature of the Class Vehicles

### FIFTH CAUSE OF ACTION

**Breach of the Implied Warranty of Merchantability Pursuant to the
Tex. Bus. & Com. Code § 2.314
(Plaintiff Sweeny on behalf of the Texas Class)**

141.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

142.    Defendant is a merchant with respect to motor vehicles.

143.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Sweeny and the Texas Class members.

144.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

145.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff Sweeny and Texas class members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

146.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## SIXTH CAUSE OF ACTION

**Breach of Express Warranty under Tex. Bus. & Com. Code Ann. § 2.313
(Plaintiff Sweeny on behalf of the proposed Texas Class)**

147.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

148.    In connection with the sale or lease of the Class Vehicles to Plaintiff Sweeny and Texas Class members, Defendant provided Plaintiff Sweeny and class members with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

149.    Plaintiff Sweeny and Texas Class members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

150.    Plaintiff Sweeny and the Texas Class members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Windshield Defect under the vehicle's warranty as described herein.

151.    Plaintiff Sweeny and Texas Class members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

152.    As a result of said nonconformities, Plaintiff Sweeny and Texas Class members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

153.    Plaintiff Sweeny and Texas Class members could not reasonably have

discovered said nonconformities with the Class Vehicles prior to Plaintiff Sweeny's and Texas Class members' acceptance of the Class Vehicles.

154.    Plaintiff Sweeny and Texas Class members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

155.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Sweeny and Texas Class members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

<b><u>SEVENTH CAUSE OF ACTION</u></b>

<b>Violation of the Arizona Consumer Fraud Act<br>Ariz. Rev. Stat. Ann. § 44-1522, <i>et seq.,</i><br>(Plaintiff Davis on behalf of the Arizona Class)</b>

156.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

157.    The Davis Vehicle and the Arizona Class Vehicles are "merchandise" under Ariz. Rev. Stat. Ann. § 44-1521(5).

158.    Defendant is a "person" under Ariz. Rev. Stat. Ann. § 44-1521(6) because it is a corporation.

159.    The Arizona Consumer Fraud Act ("ACFA") broadly prohibits "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any

38

material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. Ann. § 44-1522(A).

160.    "Arizona courts construe the ACFA to provide a right of action on any person damaged by a violation of the Act." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 825 (D. Ariz. 2016).

161.    The allegations set forth herein constitute false, misleading, or deceptive acts and omissions in violation of the ACFA.

162.    By failing to disclose and concealing the defective nature of the Class Vehicles' front windshield from Plaintiff Davis and Arizona Class Members, Defendant violated the ACFA as it represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

163.    Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

164.    Defendant knew that the Class Vehicles' front windshields suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

165.    Defendant was under a duty to Plaintiff Davis and the Arizona Class Members to disclose the defective nature of the Class Vehicles' front windshields and/or the associated

repair costs because:

    d.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' front windshields;

    e.    Plaintiff Davis and the Texas Class Members could not reasonably have been expected to learn or discover that their front windshields have a dangerous safety defect until after they purchased the Class Vehicles; and,

    f.    Defendant knew that Plaintiff Davis and the Arizona Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

166.    The facts concealed or not disclosed by Defendant to Plaintiff Davis and Arizona Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

167.    Plaintiff Davis and the Arizona Class relied on Defendant to disclose material information it knew, such as the defective nature of the windshields in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

168.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

169.    The facts concealed or not disclosed by Defendant to Plaintiff Davis and the other Arizona Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

170.    Had Plaintiff Davis and other Arizona Class Members known that the Class Vehicles' front windshields were defective, they would not have purchased the Class Vehicles

or would have paid less for them.

171.    Plaintiff Davis and the other Arizona Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles and their front windshields.

172.    As a result of Defendant's misconduct, Plaintiff Davis and the other Arizona Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles and their front windshields are defective and require repairs or replacement and are worth less money because of the Defect.

173.    Plaintiff Davis has provided adequate notice to Defendant.

174.    Plaintiff Davis and the Arizona  Class should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles

## EIGHTH CAUSE OF ACTION

### Breach of the Implied Warranty of Merchantability
### Pursuant to Ariz. Rev. Stat. Ann. § 47-2314
### (Plaintiff Davis on behalf of the Arizona Class)

175.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

176.    Defendant is a merchant with respect to motor vehicles.

177.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Davis and the Arizona Class members.

178.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

179.    Defendant breached the implied warranty of merchantability in that the Class

Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff Davis and Arizona class members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

180.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

### NINTH CAUSE OF ACTION

**Breach of Express Warranty under Ariz. Rev. Stat. Ann. § 47-2313**
**(Plaintiff Davis on behalf of the proposed Arizona Class)**

181.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

182.    In connection with the sale or lease of the Class Vehicles to Plaintiff Davis and Arizona Class members, Defendant provided Plaintiff Davis and Arizona Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the first 36 months or 36,000 miles in service, whichever comes first.

183.    Plaintiff Davis and Arizona Class members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

184.    Plaintiff Davis and the Arizona Class members submitted their Vehicles for

warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Windshield Defect under the vehicle's warranty as described herein.

185.    Plaintiff Davis and Arizona Class members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

186.    As a result of said nonconformities, Plaintiff Davis and Arizona Class members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

187.    Plaintiff Davis and Arizona Class members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Davis's and Arizona Class members' acceptance of the Class Vehicles.

188.    Plaintiff Davis and Arizona Class members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

189.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Davis and Arizona Class members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves  and all others similarly situated, pray for judgment against Defendant as follows:

     a.   An order certifying the proposed Classes, designating Plaintiffs as named representative of the Classes, and designating the undersigned as Class Counsel;

     b.   An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

     c.   An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

     d.   Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

     e.   A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

     f.   Reasonable attorneys' fees and costs;

     g.   Pre-judgment and post-judgment interest, as provided by law;

     h.   Plaintiffs demand that Defendant perform a recall, and repair all Class Vehicles; and

     i.   Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: February 9, 2022

                                      Respectfully submitted,

By:     */s/ Jody B. Burton*
          Jody B. Burton, Esq.
          LEMBERG LAW, L.L.C.
          43 Danbury Road
          Wilton, CT 06897
          Telephone: (203) 653-2250
          Facsimile:  (203) 653-3424
          *Attorneys for Plaintiffs*